UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-293-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| TIMOTHY ANTHONY MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 57). The Government has responded in opposition to the motion. (Doc. No. 61). For the following reasons, Defendant's motion will be **DENIED**.

I. BACKGROUND

**A. Criminal Conduct**

Defendant participated in a significant conspiracy to distribute cocaine base. Between December 29, 2016, and January 5, 2017, Defendant sold cocaine to two different undercover detectives. (Doc. No. 21 at 3). On January 5, 2017, investigators stopped Defendant and seized 18.8 grams of cocaine base, other narcotics, and $1,071 in cash. (Id. at 4). Investigators also executed a search warrant at Defendant's residence, finding additional narcotics, $15,400 in cash, two pistols, and ammunition. (Id.). After obtaining bond following his arrest, investigators received intelligence that Defendant was continuing to distribute narcotics. (Id.). Investigators subsequently arrested Defendant and seized 34.3 grams of cocaine, other narcotics, $1,135 in cash, and a variety of drug trafficking paraphernalia. (Id.). In total, the Court held Defendant accountable for trafficking over 600 grams of cocaine base. (Id.).

As a result of his criminal conduct, Defendant pleaded guilty pursuant to an information

1

and plea agreement to conspiring to distribute and possess with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Doc. No. 1). The Court ultimately sentenced him to 108 months in prison. (Doc. No. 29).

Defendant has an extensive criminal history. Defendant was previously convicted of a variety of drug, weapons, and assault charges, including: (i) carrying a concealed weapon; (ii) possessing marijuana; (iii) assault on a female; and (iv) possessing cocaine with intent to sell/deliver, for which he received a four-year state prison sentence. (Doc. No. 21 at 6–9). Then, in 1994, he was convicted in this Court of conspiracy to possess with intent to distribute cocaine base, possessing with intent to distribute cocaine base, and possessing a firearm during and in relation to a drug trafficking crime. (Id. at 10). In that case, Defendant served as a leader/organizer in a drug trafficking conspiracy responsible for distributing approximately 40 kilograms of cocaine base in the Charlotte area. (Id.). During the conspiracy, Defendant carried firearms on several occasions, threatened individuals by pointing firearms at them, "pistol-whipped" individuals, and shot at someone over an outstanding drug debt. (Id.). This Court initially sentenced Defendant to life imprisonment, but the Court twice subsequently reduced Defendant's sentence. (Id.).

While serving his first term in federal prison, Defendant conspired to have someone smuggle marijuana into his federal prison. (Id. at 11). Prison authorities caught him with approximately 96 grams of marijuana inside his federal prison. (Id.). Consequently, he ultimately pleaded guilty in the U.S. District Court for the Eastern District of Virginia to possessing contraband in prison. (Id.). He received a 10-month sentence to run consecutively to the federal prison sentence he was already serving. (Id.).

Defendant was released from federal prison on his first two federal cases on April 25,

2014. (Id. at 10–11). Less than three years after spending approximately 20 years in federal prison for drug trafficking, Defendant engaged in the drug trafficking conspiracy giving rise to the instant case.

Defendant is 58 years old. See (Gov't Ex. A at 1). He is currently serving his sentence at Federal Medical Center Butner ("FMC Butner") in Butner, North Carolina, with an anticipated release date of August 23, 2025. See (Gov't Ex. B at 1, 2). He has served approximately sixty-five percent of his sentence, assuming that he obtains maximum credit for good time served. See (Id. at 3). During his current federal prison term, BOP sanctioned him for the disciplinary infraction of possessing a hazardous tool in February 2021. See (Gov't Ex. C at 1).

**B. Request for Compassionate Release**

The instant motion is Defendant's third motion for compassionate release. (Id.). In his motion, Defendant makes the following arguments in favor of his release: (i) his (unspecified) health conditions render him particularly vulnerable to COVID-19; (ii) FMC Butner staff intentionally exposed inmates to COVID-19 in September 2021, causing several deaths; (iii) although he pleaded guilty to a drug trafficking conspiracy in violation of 21 U.S.C. § 846, his conviction is improper because he cannot have conspired with just himself; (iv) the First Step Act lowered his sentence; (v) he presents a low risk of recidivism; and (vi) he has a good release plan.

**C. Medical Records**

Based on a review of Defendant's medical records, he suffers from: (i) prostate cancer; (ii) high blood pressure; (iii) being overweight; (iv) lower back pain; and (v) presbyopia (farsightedness). See (Gov't Ex. A at 105–06). Medical records from a June 3, 2022, medical visit note that medical staff caught Defendant's prostate cancer early and that it has not

3

metastasized. (Id. at 68). The most recent note concerning his prostate cancer notes that his prostate-specific antigen ("PSA") number has come down considerably with treatment and assesses that he is "[d]oing well with good PSA response." (Id. at 20). During a medical exam on March 1, 2022, the doctor noted that Defendant "is extremely muscular and works out daily," that x-rays of his spine showed "minimal arthritis," and that "radiation therapy was recommended for his prostate cancer." (Id. at 122). Records from a March 15, 2022, medical exam note that, apart from the prostate cancer, he has a mild orthopedic issue for which he takes acetaminophen, and that he has "no other chronic medical issues." (Id. at 108). His most recent medical visits have been to address leg and shoulder pain, for which the medical clinic issued him arch supports and medication. (Id. at 1–12). The records note that Defendant "admits that his left shoulder is much improved." (Id. at 12).

Defendant's medical records also reflect his compassionate release request to his warden, noting that he does not meet the medical criteria for release. (Id. at 5). Finally, Defendant's medical records indicate that, as of January 16, 2022, he has received two COVID-19 immunizations and that he tested positive for COVID-19 on that date, but he was asymptomatic. (Id. at 129, 131).

## II. DISCUSSION

### A. Defendant's Contention that His Medical Conditions Make Him Susceptible to COVID-19

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy

4

statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider the § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Defendant has not established an extraordinary and compelling reason for compassionate release. As explained above, he suffers from: (i) prostate cancer; (ii) high blood pressure; (iii) being overweight; (iv) lower back pain; and (v) presbyopia (farsightedness). See (Gov't Ex. A at 105–06). Medical records from a June 3, 2022, medical visit note that medical staff caught Defendant's prostate cancer early and that it has not metastasized. (Id. at 68). The most recent

5

note concerning his prostate cancer notes that his prostate-specific antigen ("PSA") number has come down considerably with treatment and assesses that he is "[d]oing well with good PSA response." During a medical exam on March 1, 2022, the doctor noted that Defendant "is extremely muscular and works out daily," that x-rays of his spine showed "minimal arthritis," and that "radiation therapy was recommended for his prostate cancer." (Id. at 122). Records from a March 15, 2022, medical exam note that, apart from the prostate cancer, he has a mild orthopedic issue for which he takes acetaminophen, and that he has "no other chronic medical issues." (Id. at 108). His most recent medical visits have been to address leg and shoulder pain, for which the medical clinic issued him arch supports and medication. (Id. at 1–12). The records note that Defendant "admits that his left shoulder is much improved." (Id. at 12).

Additionally, Defendant's medical records indicate that, as of January 16, 2022, he had received two COVID-19 immunizations and that he tested positive for COVID-19, but he was asymptomatic. (Id. at 129, 131). Here, Defendant presents the risk factors of prostate cancer, high blood pressure, and being overweight. However, these conditions do not constitute an extraordinary and compelling reason justifying release because Defendant has been fully vaccinated. See, e.g., United States v. Adkins, 854 F. App'x 758, 759–60 (7th Cir. Aug. 5, 2021) (upholding district court's denial of defendant's compassionate release motion on the basis that the defendant had been fully vaccinated against COVID-19). Accordingly, because Defendant has been vaccinated and has recovered from an asymptomatic COVID-19 infection, he has failed to establish that "extraordinary and compelling" reasons justify his release.

The Court further finds that even if Defendant had shown extraordinary and compelling reasons for compassionate release, consideration of the Section 3553(a) factors counsel strongly against release. As discussed above, Defendant has an extensive criminal history that suggests he

6

poses a real danger of recidivism as well as danger to the community. He had previously been convicted of a variety of drug, weapons, and assault charges, including: (i) carrying a concealed weapon; (ii) possessing marijuana; (iii) assault on a female; and (iv) possessing cocaine with intent to sell/deliver, for which he received a four-year state prison sentence. (Doc. No. 21 at 6–9). Then, in 1994, he was convicted in this Court of conspiracy to possess with intent to distribute cocaine base, possessing with intent to distribute cocaine base, and possessing a firearm during and in relation to a drug trafficking crime. (Id. at 10). In that case, the defendant served as a leader/organizer in a drug trafficking conspiracy responsible for distributing approximately 40 kilograms of cocaine base in the Charlotte area. (Id.). During the conspiracy, Defendant carried firearms on several occasions, threatened individuals by pointing firearms at them, "pistol-whipped" individuals, and shot at someone over an outstanding drug debt. (Id.).

Contrary to Defendant's assertion that he presents a low risk of recidivism, he sustained another federal conviction while serving his first federal drug trafficking sentence. While serving his first term in federal prison, Defendant conspired to have someone smuggle marijuana into his federal prison. See (Doc. No. 21 at 11). Prison authorities caught him with approximately 96 grams of marijuana inside his federal prison. (Id.). Consequently, he ultimately pleaded guilty in the U.S. District Court for the Eastern District of Virginia to possessing contraband in prison. He received a 10-month sentence to run consecutively to the federal prison sentence he was already serving. (Id.).

Defendant was released from federal prison on his first two federal cases on April 25, 2014. (Id. at 10–11). Less than three years after spending approximately 20 years in federal prison for drug trafficking, Defendant engaged in the drug trafficking conspiracy giving rise to the instant case.

Defendant's federal drug trafficking offenses were serious, involving violence and threats of violence, and Defendant was at times armed. Additionally, as detailed above, Defendant's prior criminal history, particularly his prior federal drug trafficking conviction and sentence, weighs heavily against a sentence reduction. This is particularly true given that Defendant was often armed and committed violence during his two federal drug cases, and that he continued to deal drugs while on bond and even while in federal prison. Releasing Defendant from prison now would reduce the Court's sentence by over one-third. Given Defendant's extensive history of drug dealing and his prior federal drug trafficking conviction, reducing his sentence would undermine the statutory goals of deterrence and promoting respect for the law. For these reasons, the motion for compassionate release will be denied.

**B. Defendant's Allegation that BOP Staff Intentionally Infected Inmates**

In his motion, Defendant also alleges that FMC Butner staff intentionally exposed inmates to COVID-19 in September 2021, causing several deaths, and he includes an affidavit to that effect in his motion. See (Doc. No. 57 at 8). This allegation is completely unsubstantiated and does not provide any justification for releasing Defendant.

**C. Defendant's Substantive Challenge to his Conspiracy Conviction**

Defendant also argues that his conviction of a drug trafficking conspiracy in violation of 21 U.S.C. § 846 was improper, as he "[could] not conspire with himself." See (Doc. No. 57 at 5). However, Defendant may not use a compassionate release motion to challenge the validity of his conviction or sentence. See United States v. Ferguson, 55 F.4th 262, 269–72 (4th Cir. 2022) (explaining that the only proper avenue for challenging the validity of a conviction or sentence is a motion pursuant to 28 U.S.C. § 2255 and stating that "[t]herefore, we hold that a compassionate release motion cannot be used to challenge the validity of a defendant's

8

conviction or sentence"). Accordingly, Defendant cannot challenge his conviction as a basis for compassionate release.

### D. Defendant's Contention that the First Step Act Lowered Defendant's Sentence

Defendant also claims that the First Step Act lowered his sentence. See (Doc. No. 57 at 5). But he is not eligible for the relief he seeks. Section 404 of the First Step Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(b) of the Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010, (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." 132 Stat. at 5222.

Sections 2 and 3 of the Fair Sentencing Act increased the threshold quantities of crack cocaine that would subject a defendant to particular mandatory minimum sentences and eliminated the mandatory minimum sentence that previously applied to simple possession of crack cocaine. 124 Stat. at 2372. Section 404(c) of the Act makes clear that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed . . . in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010."

Here, Defendant pleaded guilty to conspiring to distribute and possess with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) on November 20, 2017. See (Doc. No. 12). This Court adjudicated him guilty of that offense and sentenced him on March 27, 2018. See (Doc. No. 29). Because Defendant was charged, pleaded guilty, and was sentenced years after the Fair Sentencing Act of 2010 went into effect, his case was already subject to that law's reductions for crack cocaine offenses. Accordingly, this claim

presents no basis for relief.

For all these reasons, the Court will deny Defendant's motion.[1]

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 57), is **DENIED**.

Signed: February 1, 2023

Max O. Cogburn Jr
United States District Judge

---

[1] Defendant also requests that the Court order BOP to place him in home confinement. But the Court lacks jurisdiction to order this relief. Once a district court imposes a prison sentence, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b). A court has no authority to designate a prisoner's place of incarceration. United States v. Voda, 994 F.2d 149, 151–52 (5th Cir. 1993). Furthermore, to the extent that Defendant requested appointment of counsel, the request is denied, as Defendant has no constitutional right to counsel in post-conviction motions such as this one.